**26-10715**

# UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

GREAT WEST CASUALTY COMPANY,
*Plaintiff-Appellant,*
v.
NILDA MERALLA, as personal representative of the estate of Tyler Brian Escudero Ferguson; RODRICK ROLLE, as personal representative of the estate of Sharon Ferguson; LAWRENCIA FERGUSON, individually and as natural parent and guardian of minors, S.B. and L.B.; MAMO TRANSPORTATION, INC.; RYDER TRUCK RENTAL, INC.; and TITUS CARTER;
*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Southern District of Florida

---

# PRINCIPAL BRIEF OF APPELLEES NILDA MERALLA, RODRICK ROLLE, AND LAWRENCIA FERGUSON

---

**HARRIS APPEALS, P.A.**
**Andrew A. Harris**
5220 Hood Road, Suite 201
(561) 867-9500
Palm Beach Gardens, Florida 33418
*Appellate Counsel for Rodrick Rolle*

**CREED & GOWDY, P.A.**
**Bryan S. Gowdy**
**Dimitrios A. Peteves**
865 May Street
Jacksonville, Florida 32204
(904) 350-0075
*Appellate Counsel for Nilda Meralla and Lawrencia Ferguson*

**SEARCY DENNEY SCAROLA BARNHART & SHIPLEY**
**Clell Calvin Warriner, III**
2139 Palm Beach Lakes Boulevard
PO Drawer 3626
West Palm Beach, Florida 33402
(561) 686-6300
*Trial counsel for Rodrick Rolle*

**DAVIS GOLDMAN, PLLC**
**Aaron Davis, Michael Bild, Laura Arango**
2 S Biscayne Blvd, Suite 2540
Miami, Florida 33131
(305) 800-6673
*Trial counsel for Nilda Meralla*

**SCOLARO LAW**
**Thomas Scolaro, Max Malvin**
1728 Coral Way, Suite 702
Miami, Florida 33145
(305) 424-2300
*Trial counsel for Lawrencia Ferguson*

## STATEMENT REGARDING ORAL ARGUMENT

We do not oppose oral argument but believe it is unnecessary. Contrary to Great West's suggestion, the outcome of this appeal is driven by the specific facts of this case. Namely, the district court based its ruling on a two-page letter sent by Great West to its insureds.

The record is short and easy to digest. The district court's thorough order correctly applied settled principles of Florida statutory interpretation to unambiguous statutory language and to a letter that Great West authored and has never disputed. The facts are undisputed, the dispositive document speaks for itself, and the briefs adequately present the issues.

Further, Great West has abandoned any challenge to the district court's consideration of the letter—the very document on which the ruling turns—apparently in an effort to obtain precedent on an incomplete record. Thus, this case is not a suitable vehicle for creating precedent applicable to other cases.

## TABLE OF CONTENTS

Statement regarding oral argument ........ i

Table of contents ........ ii

Table of citations ........ v

Statement regarding adoption of briefs ........ xi

Statement of jurisdiction ........ xii

Statement of the issue ........ 1

Introduction ........ 2

Statement of the case ........ 3

I. Course of proceedings ........ 3

A. Great West's complaint for interpleader under section 624.155(6)(a), Florida Statutes ........ 3

B. Lawrencia Ferguson's motion to strike based on the September 2024 letter ........ 4

C. Rodrick Rolle's motion to dismiss ........ 6

D. Nilda Meralla's motion to dismiss ........ 6

E. The hearing on the motions ........ 7

F. The district court's order ........ 9

1. Subject-matter jurisdiction ........ 9

2. Consideration of the September 2024 letter ........ 9

3. Interpretation of the statute ........ 9

4. Application of the statute ........ 11

5. Great West's counterarguments ........ 11

6. Conclusion ........ 14

II. Statement of facts ........ 15

A. The crash ........ 15

B. The state court litigation ........ 17

III. Standard of review ........ 17

Summary of argument ........ 18

Argument ........ 19

I. Based on facts pleaded in the complaint and Great West's September 2024 letter, the district court correctly concluded that Great West did not meet the 90-day deadline in section 624.155(6), Florida Statutes. ........ 19

A. Great West's "background" discussion does not support its interpretation of the statute. ........ 19

1. This Court should not rely on a legislative staff analysis. Regardless, the staff analysis supports the district court's interpretation. ........ 19

2. The district court correctly applied Florida's textualist approach to statutory interpretation. ........ 22

B. The court correctly interpreted section 624.155(6). ........ 29

1. The court correctly rejected Great West's interpretation of "claims" to mean "demands for payment under the policy." ........ 29

2. The court correctly interpreted "may exceed" and "who may be liable to the third-party claimants." ........ 36

C. The court correctly concluded that the September 2024 letter triggered the 90-day deadline ........ 44

II. This Court should not certify a question to the Florida Supreme Court....55

III. If this Court reverses, it should make clear that its reversal does not preclude the district court from revisiting the application of section 624.155(6) at summary judgment or at trial. ....59

IV. The amicus misstates the effect of section 624.155(6). But this Court need not address the issue regardless of the outcome on appeal. ....61

Conclusion ....66

Certificate of compliance....66

## TABLE OF CITATIONS

**CASES**


*Aldana v. Progressive Am. Ins.*,
828 F. App'x 663 (11th Cir. 2020) .................................... 62–63

*Atl. Candy Co. v. Yowie N. Am., Inc.*,
400 So. 3d 850 (Fla. Dist. Ct. App. 2025) .................................... 38

*Baldwin v. Express Oil Change, LLC*,
87 F.4th 1292 (11th Cir. 2023) .................................... 55

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................... 60

*Berges v. Infinity Ins.*,
896 So. 2d 665 (Fla. 2004) .................................... 21, 62, 63

*Boston Old Colony Ins. v. Gutierrez*,
386 So. 2d 783 (Fla. 1980) .................................... 29, 54

*Brink v. Direct Gen. Ins.*,
38 F.4th 917 (11th Cir. 2022) .................................... 63

*Brito v. Salas*,
434 So. 3d 39 (Fla. 2025) .................................... 25

*City of Miami v. Gabela*,
390 So. 3d 65 (Fla. Dist. Ct. App. 2023) .................................... 49

*Conage v. United States*,
346 So. 3d 594 (Fla. 2022) .................................... 22, 23

*Escareno v. Noltina Crucible & Refractory Corp.*,
139 F.3d 1456 (11th Cir. 1998) .................................... 55, 56

*Freeman v. First Union Nat'l*,
329 F.3d 1231 (11th Cir. 2003) .................................... 57

**Fried v. State*,
355 So. 3d 899 (Fla. 2023) .................................... 48–49

*Gaul v. Gaul*,
No. 6D2023-0935, 2026 WL 1615168 (Fla. Dist. Ct. App. June 5, 2026).... 19

*Griffin Indus., Inc. v. Irvin*,
496 F.3d 1189 (11th Cir. 2007)................................................... 17, 31

*Gutierrez v. Yochim*,
23 So. 3d 1221 (Fla. Dist. Ct. App. 2009) ........................................... 62

*Harkless v. Laubhan*,
278 So. 3d 728 (Fla. Dist. Ct. App. 2019) ........................................... 34

*Harvey v. GEICO Gen. Ins.*,
259 So. 3d 1 (Fla. 2018) ............................................................... 62, 64

*Hernandez Alvarez v. Warden Fed. Det. Ctr.*,
175 F.4th 1258 (11th Cir. 2026) .................................................. 25–26

*Hoever v. Marks*,
993 F.3d 1353 (11th Cir. 2021)........................................................... 17

*Johnson v. City of Atlanta*,
107 F. 4th 1292 (11th Cir. 2024) ........................................................ 44

*Jones v. Dillard's, Inc.*,
331 F.3d 1259 (11th Cir. 2003)........................................................... 55

*Kruse v. Mass. Mut. Life Ins.*,
No. 17-cv-61115, 2018 WL 11352651 (S.D. Fla. Jan. 25, 2018).......... 30

*La Grasta v. First Union Sec., Inc.*,
358 F.3d 840 (11th Cir. 2004)............................................................. 60

*Lee W. Coast Life Ins.*,
688 F.3d 1004 (9th Cir. 2012)............................................................. 65

*Life Ins. of N. Am. v. Rainey*,
No. 3:23-cv-993, 2024 WL 2016157 (M.D. Fla. Apr. 5, 2024) ............. 30

*Loumpos v. Bank One*,
423 So. 3d 856 (Fla. 2025) ................................................................. 41

*Machalette v. S.-Owners Ins.*,
No. 8:10–cv–600, 2011 WL 3703368 (M.D. Fla. Aug. 23, 2011).... 45–49

*Markuson v. State Farm Mut. Auto. Ins.*,
380 So. 3d 1258 (Fla. Dist. Ct. App. 2024) ........................................ 61

*Martinez v. GEICO Ins.*,
152 F.4th 1323 (11th Cir. 2025) ......................................................... 65

*May v. Ill. Nat'l Ins.*,
771 So. 2d 1143 (Fla. 2000) ......................................................... 61–62

*McMillian v. Johnson*,
88 F.3d 1554 (11th Cir. 1996)...................................................... 56, 60

*Mega Life & Health Ins. v. Pieniozek*,
516 F.3d 985 (11th Cir. 2008)............................................................ 17

*Mendia v. Galvez*,
418 So. 3d 838 (Fla. Dist. Ct. App. 2025) ............................................ 27

*MFA Mut. Ins. v. Lusby*,
295 F. Supp. 660 (W.D. Va. 1969) ................................................ 50–51

*Moncrief v. Kollmer*,
397 So. 3d 190 (Fla. Dist. Ct. App. 2024) ...................................... 37–38

*Montgomery v. Caribe Transp. II, LLC*,
146 S. Ct. 1199 (2026)........................................................................ 43

*Murphy v. Progressive Am. Ins.*,
No. 3:22-cv-1074, 2024 WL 5338177 (M.D. Fla. Oct. 11, 2024) .......... 63

*Newkirk Constr. Corp. v. Gulf Cty.*,
366 So. 2d 813 (Fla. Dist. Ct. App. 1979) ........................................... 28

*Nielsen v. Preap*,
586 U.S. 392 (2019)............................................................................. 25

*N. Am. Co. for Life & Health Ins. v. Dye*, No. 3:11–cv–1234, 2012 WL
476090 (M.D. Fla. Aug. 24, 2012)....................................................... 30

*Odom v. Canal Ins.*,
582 So. 2d 1203 (Fla. Dist. Ct. App. 1991) .......................................... 63

**Rainess v. Est. of Machida*,
81 So. 3d 504 (Fla. Dist. Ct. App. 2012) ............................................ 28

*Ripple v. CBS Corp.*,
385 So. 3d 1021 (Fla. 2024) ................................................................ 23

*Rubinbaum LLP v. Related Corp.*,
154 F. Supp. 2d 481 (S.D.N.Y. 2001) ............................................ 28–29

*Sapuppo v. Allstate Floridian Ins.*,
739 F.3d 678 (11th Cir. 2014) .............................................................. 44

*SE Prop. Holdings, LLC v. Welch*,
65 F.4th 1335 (11th Cir. 2023) ............................................................ 55

*State v. Barnum*,
921 So. 2d 513 (Fla. 2005) .................................................................. 58

**State v. Bradford*,
787 So. 2d 811 (Fla. 2001) .................................................................. 33

**State v. Crose*,
378 So. 3d 1217 (Fla. Dist. Ct. App. 2024) .......................................... 37

**Statler v. State*,
349 So. 3d 873 (Fla. 2022) ............................................................ 33, 64

*Stewart v. Vindel*,
No. SC2024-0428, 2026 WL 1979606 (Fla. July 9, 2026) ............. 34–35

*Storey Mountain v. Del Amo (In re Del Amo)*,
158 F.4th 1335 (11th Cir. 2025) .......................................................... 65

*T.G. United, Inc. v. AADD Props., LLC*,
371 So. 3d 396 (Fla. Dist. Ct. App. 2023) ............................................ 37

*Taylor v. Nicholson-Williams, Inc.*,
368 So. 3d 1007 (Fla. Dist. Ct. App. 2023) .................................... 19–20

*United States v. Gyetvay*,
149 F.4th 1213 (11th Cir. 2025) ........................................................25

**Westgate & Wabasso Corp. v. Word of Faith Cmty. Dev. Corp.*,
428 So. 3d 608 (Fla. Dist. Ct. App. 2026) .................................... 33, 64

*Wynne Bldg. Corp. v. Spanish Lakes Country Club Vill. Homeowner's Ass'n*,
428 So. 3d 154 (Fla. Dist. Ct. App. 2026) ..........................................25

**CONSTITUTION**

Fla. Const. art. V, § 3(b)(6)...................................................................57

**STATUTES**

28 U.S.C. § 1332(a).......................................................................xii, 9

*Fla. Stat. § 624.155(4)(a) ............................................ 13, 27, 32, 43, 64

*Fla. Stat. § 624.155(6)(a) ..............................1–4, 6, 8–10, 14–15, 18–20, 23–24, 26–30, 32–35, 39, 41–43, 45, 47 49–50, 53–55, 57–61, 63–66

*Fla. Stat. § 624.155(6)(b) ......................................................... 41, 43, 49

Fla. Stat. § 624.3161(9) ...............................................................................52

**RULES**

Fed. R. Civ. P. 22.............................................................................51

*Fed. R. Civ. P. 22(a)(1)(B)...............................................................50

*Fla. R. Civ. P. 1.240 ..............................................................28, 50

**OTHER AUTHORITIES**

Bryan A. Garner, *Garner's Dictionary of Legal Usage* (3d ed. 2011).....23

*Black's Law Dictionary* (12th ed. 2024) ................................................34

*Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/claim (last visited Aug. 20, 2026) ........ 30

Ch. 2023-15, § 4, Laws of Fla. ........ 34

Fla. H.R. Comms. on Judiciary and Civil Justice, HB 837 (2023) Final Bill Analysis (May 12, 2023) ........ 20

*Merriam-Webster*, https://www.merriam-webster.com/dictionary/may (last visited Aug. 20, 2026) ........ 24

*Merriam-Webster*, https://www.merriam-webster.com/dictionary/claim (last visited Aug. 20, 2026) ........ 30

Neil Gorsuch, *A Republic, If You Can Keep It* (2019) ........ 53

7 *Wright & Miller's Federal Practice & Procedure* § 1716 (3d ed. Apr. 2026 update). ........ 51

## STATEMENT REGARDING ADOPTION OF BRIEFS

This brief is filed before the briefs of the remaining Appellees. Thus, we have had not an opportunity to review the other briefs to determine whether to adopt any portions of those briefs.

## STATEMENT OF JURISDICTION

We agree with Great West's statement of jurisdiction. Great West is a citizen of Nebraska. DE 67. There is no dispute that Appellees are all citizens of other states and the amount in controversy is satisfied. DE 86 at 12. Accordingly, the district court had subject-matter jurisdiction under 28 U.S.C. § 1332(a).

This Court has jurisdiction under 28 U.S.C. § 1291. Although the district court dismissed Great West's complaint without prejudice and with leave to amend, DE 86 at 29–30, Great West elected not to amend, and the district court then dismissed the action and directed the clerk to close the case. DE 87. That order ended the litigation on the merits and is final and appealable. Great West timely filed a notice of appeal. DE 88.

## STATEMENT OF THE ISSUE

Section 624.155(6)(a), Florida Statutes (2024), applies only if an insurer files an interpleader action within 90 days after receiving notice of competing claims that may exceed the policy limits. Here—more than 90 days before filing its interpleader action—Great West sent a letter to its insureds that identified five claimants and declared, based on its "investigation to date," that "the potential for an excess exposure does exist" and that coverage "may be insufficient for the claims that are being pursued." DE 39 at 10–11. Was the district court correct in concluding that Great West missed the deadline?

## INTRODUCTION

Great West's insureds were in a crash that caused two deaths and injuries to three others. Great West then filed an action to interplead its policy limits, seeking to apply section 624.155(6)(a), Florida Statutes.

Section 624.155(6)(a) applies only if an insurer files an interpleader action within 90 days after receiving notice of competing claims that may exceed the policy limits. Here—more than 90 days before filing its interpleader action—Great West sent a letter to its insureds proving it had such notice. The letter identified multiple "claimant(s)," multiple "claims," and said "it has become evident that the potential for an excess exposure does exist." DE 39 at 10–11. The district court correctly concluded that Great West missed the 90-day deadline.

Great West asks this Court to certify a question of statutory interpretation to the Florida Supreme Court. But there is good reason not to. Because this case was decided on a limited factual record, it may turn out that the facts underlying the district court's order are not the whole facts, and the certified question would be entirely academic. Other reasons further weigh against certification.

## STATEMENT OF THE CASE

Because the statement of the case in Great West's brief is deficient, this brief includes a statement of the case.

### I. Course of proceedings

#### A. Great West's complaint for interpleader under section 624.155(6)(a), Florida Statutes

On February 12, 2025, Great West Casualty Company filed in the district court a complaint to interplead $2 million in policy limits. DE 1.

The complaint sought relief under section 624.155(6)(a), Florida Statutes (2024). DE 1 at 4–5. In relevant part, the statute applies only if the insurer files an interpleader action within 90 days after receiving notice of competing claims that "may exceed" the policy limits:

> (6) If two or more third-party claimants have competing claims arising out of a single occurrence, which in total **may exceed** the available policy limits of one or more of the insured parties who may be liable to the third-party claimants, an insurer is not liable beyond the available policy limits for failure to pay all or any portion of the available policy limits to one or more of the third-party claimants **if, within 90 days after receiving notice of the competing claims in excess of the available policy limits**, the insurer complies with either paragraph (a) or paragraph (b):
>
> (a) The insurer files an interpleader action under the Florida Rules of Civil Procedure. . . .

Fla. Stat. § 624.155(6)(a) (emphasis added).

Great West sought to interplead its policy limits in connection with a motor-vehicle crash in April 2024. DE 1 at 3. The defendants were:

- Mamo Transportation, Inc., the named insured;
- Titus Carter, a Mamo employee who was involved in the crash;
- Ryder Truck Rental Inc, the owner of the truck that Carter drove;
- Nilda Meralla, as personal representative of the estate of Tyler Ferguson, who died in the crash;
- Rodrick Rolle, as personal representative of the estate of Sharon Ferguson, who died in the crash; and
- Lawrencia Ferguson, individually and as natural parent and guardian of minors S.B. and L.B., each of whom were injured in the crash.

DE 1 at 1–3 ¶¶ 11–16.

### B. Lawrencia Ferguson's motion to strike based on the September 2024 letter

Lawrencia Ferguson moved to strike the complaint's requests for relief under section 624.155(6)(a), arguing that Great West failed to meet the statute's 90-day deadline. DE 38. Ferguson relied on a letter sent by Great West to its insureds, Mamo and Carter, on September 5, 2024; more than 90 days before Great West filed the interpleader action. *Id.*

The letter named five "Claimant(s)"—L.B., Tyler Ferguson, Lawrencia Ferguson, S.B., and Sharon Ferguson:

| | |
|---|---|
| O/Primary File: | 000-00-T23887 |
| O/Primary Policy # | GRT11197A |
| O/Umbrella File: | 024-08-001975 |
| O/Umbrella Policy #: | CEP01529A |
| O/Insured: | Mamo Transportation Inc. |
| Claimant(s): | L[redacted] B[redacted], Tyler B. Ferguson, Lawrencia Suekeena Ferguson, S[redacted] B[redacted], and Sharon Hortence Ferguson |
| | O/Primary Policy: $1,000,000 USD |
| O/Umbrella Policy: | $1,000,000 USD |
| Policy Periods: | 11/1/23 to 11/1/24 |
| D/Loss: | 4/24/24 |

DE 39 at 10 (emphasis added).[1]

The letter acknowledged that the crash "caused the deaths of two individuals, Sharon Ferguson . . . and . . . Tyler Ferguson," and that "[t]hree other occupants of the *claimant* vehicle were also injured." *Id.* (emphasis added).

The stated purpose of the letter was to advise Mamo and Carter that, based on Great West's "investigation to date," "it has become evident that the potential for an excess exposure does exist":

> The purpose of this letter is to advise you that **based on our investigation to date, it has become evident that the potential for an excess exposure does exist** in this matter and the coverage provided by Great West Casualty Company ("Great West") may be insufficient for the **claims** that are being pursued in this matter. The damages resulting from this loss may have a value **in excess of the policy limits** of

[1] The names of minors L.B. and S.B. are redacted. Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2(a)(3).

> insurance provided to you by Great West. Based upon the potential damages and exposure presented by this loss, this shall serve as notice to you of an **excess exposure**. As your insurer, we have a duty to advise you of settlement opportunities, to advise you as to the probable outcome of the matter and/or litigation, and to warn you of the possibility of an excess judgment and any steps you might take to avoid the same.

*Id.* (emphasis added).

The letter acknowledged the existence of multiple "claims." *Id.* It referred to damages "in excess of the policy limits" and twice referred to "excess exposure." *Id.* The letter further recognized that attorneys were defending Mamo and Carter and that counsel would work to "resolve the *claims*." DE 39 at 11 (emphasis added).

### C. Rodrick Rolle's motion to dismiss

Rodrick Rolle moved to dismiss the claims for relief under section 624.155(6)(a). DE 39. He, too, relied on the September 2024 letter to argue that Great West did not meet the 90-day deadline. *Id.*

### D. Nilda Meralla's motion to dismiss

Nilda Meralla moved to dismiss the complaint. DE 58. Again, Meralla relied on the September 2024 letter to argue that Great West did not meet the 90-day deadline. DE 58 at 3, 6.

Meralla also raised jurisdictional arguments. DE 58 at 7–8. She abandons those arguments on appeal and agrees that the district court had subject-matter jurisdiction. *Supra* Statement of Jurisdiction.

**E. The hearing on the motions**

The district court held a hearing on the motions. DE 85.

Defendants argued that the court could consider the September 2024 letter under the incorporation-by-reference doctrine, even though it was not attached to the complaint, because it was central to Great West's claim and there was no dispute as to its authenticity. *Id.* at 8:7–9:22.

Great West had argued in a written response that the court could not consider the letter under the incorporation-by-reference doctrine. DE 47 at 6–7. At the hearing, Great West did not address that issue aside from asserting it would be inappropriate to address substantive facts on a motion to dismiss. DE 85 at 25:21–24.

Regardless of the letter, Defendants argued that Great West had notice of competing claims that may exceed the policy limits more than 90 days before filing the interpleader action because wrongful-death suits had been filed in state court and discovery responses had been provided in those suits. *Id.* at 9:23–10:17. Defendants noted that one of the suits

was filed in the complex litigation division in Miami, which requires a $750,000 amount in controversy. *Id.* at 10:4–7.

In response, Great West contended it did not receive notice until November 14, 2024—exactly 90 days before it filed its interpleader complaint—when counsel for Meralla made a settlement demand for $2 million. *Id.* at 23:22–25:5. Great West argued that the word "claim" in section 624.155(6) means "a demand made for a certain amount of money." *Id.* at 26:1–5.

Great West acknowledged that a complaint could satisfy its definition of a claim. *Id.* at 26:7–10, 29:7–8. But Great West said the state court complaints did not demand more than the policy limits. *Id.* at 27:19–21, 29:20–23.

As for the September 2024 letter, Great West argued that the letter did not trigger the 90-day deadline because it merely informed of the "possibility" that claims may exceed the policy limits. *Id.* at 26:21–27:4. Great West argued that the statute requires "clear notice"—not a mere possibility. *Id.* at 26:12–27:1; *see also id.* at 33:12–17.

### F. The district court's order

The court granted all three motions in a thirty-page order. DE 86. It analyzed multiple issues, addressed below in turn.

#### 1. Subject-matter jurisdiction

The court first analyzed its subject-matter jurisdiction, concluding it had jurisdiction under 28 U.S.C. § 1332(a). *Id.* at 10–13. Great West agrees. BlueBr. ix. So do we. *Supra* Statement of Jurisdiction.

#### 2. Consideration of the September 2024 letter

The court next addressed whether it could consider the September 2024 letter. DE 86 at 16–18. The court concluded it could consider the letter under the incorporation-by-reference doctrine because the letter was central to Great West's claim and there was no dispute as to the letter's authenticity. *Id.* Great West abandoned this issue on appeal, so this brief does not address it further.

#### 3. Interpretation of the statute

The court then analyzed when the 90-day deadline begins to run under section 624.155(6). *Id.* at 18–22. The court rejected Great West's argument that the deadline is triggered only when the insurer receives notice of competing claims that clearly or likely are in excess of the available policy limits. *Id.* at 19. Applying Florida's "supremacy-of-text

principle," the court noted that "[s]ection 624.155(6) starts by referring to competing claims that 'may' exceed the available policy limits." *Id.* "The legislature did not use the words 'will exceed' or even simply 'exceed' in this phrase. It used the words 'may exceed.'" *Id.*

The court acknowledged that "the word 'may' is not set forth in the portion of Section 624.155[(6)] that mentions the 90-day deadline." *Id.* at 20. The word "may" instead appears earlier when 624.155(6) first refers to competing claims. Nevertheless, the court reasoned that "the structure of Section 624.155(6) and the rules of grammar demonstrate that the 90-day deadline is triggered by notice of competing claims that *may* be in excess of the available policy limits." *Id.* (emphasis by court).

Specifically, the court recognized that "[t]he phrase containing the 90-day deadline refers to notice of '*the* competing claims in excess of the available policy limits . . . .'" *Id.* at 21 (emphasis by court). The court explained that "the" is "a function word . . . indicating that a following noun or noun equivalent is definite or has been previously specified by context." *Id.* (citation omitted). Accordingly, "use of the definite article 'the' when referring to 'competing claims' in the phrase containing the 90-day deadline demonstrates that it is limited to 'competing claims'

referenced earlier in the statute, namely competing claims 'which in total *may* exceed the available policy limits.'" *Id.* (emphasis by court).

### 4. Application of the statute

Having interpreted the statute, the court applied the statute to the undisputed facts presented by the parties. *Id.* at 22–24. The court concluded that the "plain language of the September 2024 Letter reflects that by this date, Great West had notice of competing claims that may exceed the Policy Limits." *Id.* at 23. The court emphasized that the letter refers to "claims," identifies multiple "claimant(s)," and acknowledges the potential for "excess exposure." *Id.* at 23–24.

The court rejected the argument that the 90-day deadline should run from the date of the crash or the filing of the wrongful-death suits. *Id.* at 15 n.5. Although the court acknowledged that "lawsuits may well be 'competing claims,'" the court said "there is no indication in the record when Great West received notice of those lawsuits." *Id.*

### 5. Great West's counterarguments

The court expressly rejected Great West's counterarguments. *Id.* at 24–28.

***First***, Great West argued that the September 2024 letter cannot trigger the 90-day deadline because "insurers are entitled to a reasonable time to investigate claims and assess exposure before making settlement decisions." *Id.* at 24. The court, however, noted that the "the September 2024 Letter confirms that Great West had sufficient time to—and did—conduct an investigation." *Id.* Further, the court explained that the letter "merely started the 90-day clock, so Great West had an additional three (3) months to continue its investigation and decide whether to file an interpleader action." *Id.* In any event, the court concluded that Great West's contention was "a policy argument that is not persuasive in light of the statute's clear language." *Id.* at 25.

***Second***, Great West argued that the September 2024 letter could not trigger the 90-day deadline because Sharon Ferguson allegedly caused the accident and, under Florida's comparative-fault statute, a claimant more than 50% at fault recovers nothing. *Id.* at 25. Even if Sharon were at that degree of fault, however, the court noted that the letter identified several claimants other than Sharon's estate. *Id.* So "Great West had notice of competing claims that may exceed the Policy Limits irrespective of whether Sharon's Estate could recover." *Id.* What's

more, the court deemed it irrelevant "whether Sharon's Estate (or any of the other claimants) would ultimately succeed on their claim" because the statute requires only "notice of competing claims which in total *may* be in excess of the available policy limits." *Id.* (emphasis by court).

***Third***, the court rejected Great West's argument that there must be a "demand with supporting evidence." *Id.* at 25. The court noted that a different subsection of the statute—subsection (4)(a), which has a separate 90-day deadline—expressly requires "actual notice of a claim which is accompanied by sufficient evidence to support the amount of the claim." *Id.* at 26 (quoting Fla. Stat. § 624.155(4)(a)). By contrast, the subsection at issue here—subsection (6)—"contains no such language when referencing its own 90-day deadline." *Id.*

***Finally***, Great West argued that "the September 2024 Letter is a privileged communication drafted in furtherance of its good faith duty to advise its insured of potential exposure and, as such, cannot be used to trigger the 90-day deadline." *Id.* The court concluded that Great West failed to prove the letter is privileged. *Id.* at 27. Further, the court suggested that Great West "waived any such protection when [the letter] was shared with counsel in the underlying wrongful death case." *Id.* And

the court emphasized that Great West decided to file the interpleader action to get the benefits of section 624.155(6)(a). *Id.* The court reasoned that Great West "cannot simultaneously claim entitlement to [those benefits] while asserting privilege over documents such as the September 2024 Letter directly relevant to whether it complied with the statutory requirements." *Id.* at 28 (cleaned up).

Great West also emphasized that its duty of good faith "does not require blind/immediate acceptance of liability." *Id.* at 26. The court agreed, but it explained that its conclusion that the September 2024 Letter triggered the 90-day deadline did not mean Great West had to blindly accept liability. *Id.* at 26–27. Again, the court pointed out that "Great West conducted an investigation before issuing the [letter] and had an additional 90 days thereafter to further investigate before deciding whether to file an interpleader action." *Id.* at 27. Nothing in the statute equates filing an interpleader with accepting liability.

**6. Conclusion**

The court concluded that the September 5, 2024 letter triggered the 90-day deadline in section 624.155(6). *Id.* at 28. Because Great West did not file its interpleader action until more than 90 days later—on

February 12, 2025—the court ruled that Great West "cannot rely on Section 624.155(6) as a basis to bring this interpleader action or obtain the injunctive relief it seeks." *Id.*

Contrary to Great West's assertion that the court "dismissed the action with prejudice," BlueBr. 3, the court dismissed the complaint without prejudice and with leave to amend, inviting Great West to file an amended complaint specifying a basis other than section 624.155(6) for the relief sought. DE 86 at 29–30. Great West did not amend. The district court then dismissed the action without prejudice, DE 87, and this appeal followed. DE 88.

## II. Statement of facts

### A. The crash

On April 24, 2024, a catastrophic collision occurred on Interstate 75 in Marion County, Florida, between a commercial tractor driven by Titus Carter—an authorized driver of Great West's insured, Mamo, operating a Ryder tractor—and a minivan carrying five members of the Ferguson family. DE 1 ¶ 13; DE 1-3. The effects of the collision were grave. The driver of the minivan, Sharon, and her fifteen-year-old son Tyler, who was the front-seat passenger, were pronounced deceased at the scene

after their vehicle left the roadway, struck a tree, and became engulfed in flames. DE 1-3 at 4. The three back-seat passengers—Sharon's daughter Lawrencia, and Lawrencia's two minor children S.B. and L.B.—were taken to the hospital with injuries that the crash report classified as "incapacitating." DE 1-3 at 3–4.

Great West leads its brief with the crash report's preliminary fault notations, asserting that "Sharon Ferguson caused the crash." BlueBr. 4. The report references witness statements that Sharon's vehicle "for unknown reasons" veered to the right, and it notes "other contributing action" for Sharon and "no contributing action" for Carter. DE 1-3 at 3–4. A preliminary crash report's shorthand notations resolve nothing about liability or comparative fault; three separate wrongful death and personal injury lawsuits against Great West's insureds remain pending in Florida state court. DE 81 at 13–30, 34–45, 54–101. More fundamentally, as the district court correctly concluded, fault allocation is irrelevant to the statutory question this appeal presents. DE 86 at 25–26.

### B. The state court litigation

Litigation began promptly. On June 5, 2024—six weeks after the crash—the estate of Sharon Ferguson filed a wrongful death action in Florida state court against Mamo, Carter, and Ryder. DE 81 at 34. On June 10, 2024, the estate of Tyler Ferguson filed its own wrongful death action, seeking damages in excess of $750,000. DE 81 at 13–30. Great West, as the insurer for Mamo and Carter, undertook the defense of Mamo, Carter, and Ryder in those actions. DE 1 ¶ 16. Lawrencia Ferguson filed a tort action in January 2025. DE 81 at 54–101.

## III. Standard of review

This Court reviews de novo "a district court's order granting a motion to dismiss for failure to state a claim," *Hoever v. Marks*, 993 F.3d 1353, 1357 (11th Cir. 2021) (en banc), and "[a] district court's interpretation of a state statute," *Mega Life & Health Ins. v. Pieniozek*, 516 F.3d 985, 989 (11th Cir. 2008). Although well-pleaded allegations are accepted as true, a court is not required to accept allegations that are contradicted by a document properly considered under the incorporation-by-reference doctrine. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007).

## SUMMARY OF ARGUMENT

Based on facts pleaded in the complaint and Great West's September 2024 letter, the district court correctly concluded that Great West did not meet the 90-day deadline in section 624.155(6), Florida Statutes. The letter shows that, more than 90 days before Great West filed the interpleader action, Great West had notice of competing claims that may exceed the policy limits.

The district court correctly interpreted the statute. The court properly applied Florida's textualist approach to statutory interpretation, considering multiple textual and structural clues. In arguing otherwise, Great West ignores the court's reasoning, improperly speculates about legislative "intent," and makes consequentialist arguments suited for a legislature—not a court.

This Court should not certify a question to the Florida Supreme Court. Contrary to Great West's suggestion, the outcome of this appeal is driven by the specific facts of this case: the September 2024 letter. Further, it may turn out that the facts underlying the district court's order are not the whole facts, and the certified question would be entirely academic. Other reasons further weigh against certifying a question.

## ARGUMENT

**I. Based on facts pleaded in the complaint and Great West's September 2024 letter, the district court correctly concluded that Great West did not meet the 90-day deadline in section 624.155(6), Florida Statutes.**

**A. Great West's "background" discussion does not support its interpretation of the statute.**

**1. This Court should not rely on a legislative staff analysis. Regardless, the staff analysis supports the district court's interpretation.**

Great West says this Court must "interpret[] a Florida statute according to Florida's rules of statutory interpretation." BlueBr. 15. Great West and its amicus violate this principle by relying on a legislative staff analysis. BlueBr. 20–21, 27; GreenBr. 6, 11, 20.

Florida courts "eschew legislative history to avoid the 'backwards approach to statutory construction' that the Florida Supreme Court has rejected and to faithfully apply the 'supremacy-of-the-text principle' that it has articulated." *See Taylor v. Nicholson-Williams, Inc.*, 368 So. 3d 1007, 1015 n.3 (Fla. Dist. Ct. App. 2023) (citations omitted); *accord Gaul v. Gaul*, No. 6D2023-0935, 2026 WL 1615168, at *2 n.3 (Fla. Dist. Ct. App. June 5, 2026). This is because a court's task "is to interpret the law according to the ordinary meaning it conveys to the public at the time of enactment rather than the special meaning it conveys to a particular

committee or legislator, much less a particular legislative staffer." *Taylor*, 368 So. 3d at 1015 n.3 (citation omitted). "Legislative history does not assist in that endeavor; to the extent it has something unique to contribute, it bears more on the latter inquiries than on the first one." *Id.*

Nevertheless, the staff analysis supports the district court's interpretation of section 624.155(6). It states in relevant part:

> Under the bill, if two or more third-party claimants have competing claims arising out of a single occurrence, which in total **may exceed** the insured's available policy limits, the insurer is not liable beyond the policy limit amount for failing to pay all or any portion of the available limits to one or more of the third-party claimants if, **within 90 days after receiving notice of the competing claims**, the insurer . . . [f]iles an interpleader action . . . .

Fla. H.R. Comms. on Judiciary and Civil Justice, HB 837 (2023) Final Bill Analysis at 16 (May 12, 2023), https://tinyurl.com/dc5njxuy (emphasis added).

The staff analysis uses the phrase "may exceed" when discussing "competing claims" and it uses the definite article "the" when referring back to "competing claims" in connection with the 90-day deadline. *Id.* That is the same language the district court relied on to interpret the statute. DE 86 at 18–22.

Great West's discussion about the history of bad-faith claims, including complaints about the lack of "clarity," also does not support its position. BlueBr. 21–24. Those complaints sought "logical, objective standards" with "set time periods." *See, e.g.*, *Berges v. Infinity Ins.*, 896 So. 2d 665, 686 (Fla. 2004) (Wells, J., dissenting). The district court's interpretation delivers exactly that: an objective trigger (notice of competing claims that may exceed the limits) and a set period of 90 days. DE 86 at 22.

Great West and its amicus's interpretation delivers the opposite: a trigger dependent on the insurer's own "practical objective assessment" of liability and damages, contestable in every case, reintroducing precisely the fact-bound litigation the legislature supposedly sought to end, and placing the start of the insurer's deadline within the insurer's unilateral control. *See* BlueBr. 17, 34.

Great West's proposed trigger—competing, evidence-supported demands, "reasonably capable of exceeding limits based on actual information available to the insurer" following an adequate liability assessment, BlueBr. 34—also cannot survive Great West's own theory of the case.

Great West alleged in its complaint that it first received notice of competing claims that may exceed the limits in a November 14, 2024 telephone call. DE 1 ¶ 17. Its brief now emphasizes January 27, 2025, when Lawrencia Ferguson's counsel sent what Great West calls a "barebones" letter. BlueBr. 17, 29. A letter that said counsel was "not yet in possession of their medical records nor bills." DE 46-1.

Great West contends that the November 14 call "was only the first claim and not a 'competing claim,'" while hastening to add that its complaint "was also filed within 90 days of the phone call." BlueBr. 29 n.12. Under Great West's own "sufficient evidence" standard, neither event would start the clock. Great West's interpretation would mean the 90-day period had never begun when it filed suit. An interpretation that its proponent cannot satisfy, and that would leave the deadline perpetually unstarted at the insurer's option, is not a plausible account of a provision whose supposed purpose is to require prompt action.

#### 2. The district court correctly applied Florida's textualist approach to statutory interpretation.

Great West spends three pages discussing the Florida Supreme Court's decision in *Conage v. United States*, 346 So. 3d 594 (Fla. 2022), including *Conage*'s rejection of the principle that "[w]hen the language of

the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction." BlueBr. 24–26. The district court was aware of this, as it quoted *Conage* in its order. DE 86 at 21.

Great West argues that the district court "failed to follow" *Conage*. BlueBr. 26. But Great West does not explain why—it simply says so. *Id.*

The Florida Supreme Court has explained that *Conage* requires courts to consider "'all the textual and structural clues' that bear on the meaning of a disputed text." *Ripple v. CBS Corp.*, 385 So. 3d 1021, 1027 (Fla. 2024) (*quoting Conage*, 346 So. 3d at 598). The district court expressly recognized that principle. DE 86 at 21 (quoting *Conage* for the same proposition); *see also* DE 86 at 19 (similar).

The district court did not just recite Florida's textualist approach to statutory interpretation. It applied it, too: the court considered multiple textual and structural clues.

***First***, the court noted that "[s]ection 624.155(6) starts by referring to competing claims that 'may' exceed the available policy limits." DE 86 at 19. In this context, the word "may" means "possibly will." Bryan A. Garner, *Garner's Dictionary of Legal Usage* 568 (3d ed. 2011); *see also*

Merriam-Webster, https://www.merriam-webster.com/dictionary/may ("may" is "used to indicate possibility or probability"). The court emphasized that "[t]he legislature did not use the words 'will exceed' or even simply 'exceed'," which would require a certainty of exceeding the policy limits as opposed to a possibility of exceeding the policy limits. DE 86 at 19.

***Second***, the court acknowledged that "the word 'may' is not set forth in the portion of Section 624.155[(6)] that mentions the 90-day deadline." *Id.* at 20. The word "may" instead appears earlier when 624.155(6) first refers to competing claims. Nevertheless, the court reasoned that "the structure of Section 624.155(6) and the rules of grammar demonstrate that the 90-day deadline is triggered by notice of competing claims that *may* be in excess of the available policy limits." *Id.* (emphasis by court)

Specifically, the court recognized that "[t]he phrase containing the 90-day deadline refers to notice of '*the* competing claims in excess of the available policy limits . . . ." *Id.* at 21 (emphasis by court). The court further explained that "the" is "a function word . . . indicating that a following noun or noun equivalent is definite or has been previously

specified by context." *Id.* (quoting *Nielsen v. Preap*, 586 U.S. 392, 408 (2019) (quoting Merriam-Webster's Collegiate Dictionary 1294 (11th ed. 2005))). Accordingly, "use of the definite article 'the' when referring to 'competing claims' in the phrase containing the 90-day deadline demonstrates that it is limited to 'competing claims' referenced earlier in the statute, namely competing claims 'which in total *may* exceed the available policy limits.'" *Id.* (emphasis by court)

Florida courts interpret statutes the same way. *E.g.*, *Brito v. Salas*, 434 So. 3d 39, 48 (Fla. 2025) (*citing Nielsen*, 586 U.S. at 408); *Wynne Bldg. Corp. v. Spanish Lakes Country Club Vill. Homeowner's Ass'n*, 428 So. 3d 154, 157 (Fla. Dist. Ct. App. 2026) ("The definite article, the, usually introduces a particular thing or individual group, one that was mentioned before or whose existence is known or presumed to be known." (citation omitted)).

This Court has also relied on the definite article "the" as a reference to something previously mentioned. *E.g.*, *United States v. Gyetvay*, 149 F.4th 1213, 1227 (11th Cir. 2025); *see also Hernandez Alvarez v. Warden Fed. Det. Ctr.*, 175 F.4th 1258, 1271 (11th Cir. 2026) ("The second condition also lacks any definite article, such as 'the,' . . . which would

indicate that the 'alien seeking admission' is necessarily the *same* alien who is an 'applicant for admission.'").

In sum, section 624.155(6) has a simple architecture. The opening clause defines the situation the safe harbor addresses: two or more third-party claimants with competing claims arising from one occurrence "which in total may exceed the available policy limits." The deadline clause then grants protection to the insurer that acts "within 90 days after receiving notice of the competing claims in excess of the available policy limits." The deadline clause does not introduce a new, different, and stricter category of claims; it refers back to the category the statute has just defined.

***Third***, the district court relied on the surplusage canon. DE 86 at 20. If the deadline ran only from notice of claims that are "clearly or likely" in excess of the limits, the legislature's chosen words—"may exceed"—would do no work. Great West's interpretation requires one to (A) delete "may" from the defining clause, (B) insert a requirement of "formal demands," (C) insert a requirement of "sufficient evidence" (which the Legislature included in another provision, section

624.155(4)(a)), and (D) insert a completed-investigation precondition—none of which appears anywhere in subsection (6).

***Finally***, there is another clue that supports the district court's interpretation. Subsection (6)(a) states that, once the insurer timely files the interpleader action, *"[i]f the claims of the competing third-party claimants are found to be in excess of the policy limits*, the third-party claimants are entitled to a prorated share of the policy limits as determined by the trier of fact." Fla. Stat. § 624.155(6)(a) (emphasis added). The use of the word "if" shows that the legislature recognized the possibility that the competing claims do not actually exceed the policy limits. *E.g.*, *Mendia v. Galvez*, 418 So. 3d 838, 843 (Fla. Dist. Ct. App. 2025) ("The phrase 'if any' acknowledges the possibility that the event does not occur."). Thus, as the district court concluded, the competing claims need not actually exceed the policy limits for the 90-day deadline to be triggered.

Great West's amicus agrees. It says the statute applies "if, within 90 days after receiving notice that the competing claims *may* result in an excess judgment, the insurer interpleads its policy limits." GreenBr. 4 (emphasis added); *see also* GreenBr. 5, 13 (agreeing that it need only be

shown that the competing claims "may exceed" the policy limits). The amicus also correctly notes that "when Great West sent its excess letter, it knew the value of the claim [sic] was high because the injuries were so serious." GreenBr. 17–18.

The amicus argues that "may" "spans a continuum ranging from *any possibility*, no matter how slight, to *near certainty*." GreenBr. 19. The amicus further argues that this Court must "determine the point on the continuum" that triggers section 624.155(6)(a)—although the amicus offers no answer to that question. GreenBr. 19–21.

The answer lies in how Florida courts have interpreted the state's interpleader rule, Florida Rule of Civil Procedure 1.240, which requires that the interpleading plaintiff "*may* be exposed to double or multiple liability." (emphasis added). Interpreting the word "may" in this context, a Florida court has ruled that "a stakeholder need not assess the threat of multiple liability to a level of certainty or even probability." *Rainess v. Est. of Machida*, 81 So. 3d 504, 510 (Fla. Dist. Ct. App. 2012). Instead, "a 'reasonable' and 'bona fide fear' of exposure to multiple liability" suffices. *Id.* (quoting *Newkirk Constr. Corp. v. Gulf Cty.*, 366 So. 2d 813, 816 (Fla. Dist. Ct. App. 1979)); *cf. also Rubinbaum LLP v. Related Corp.*, 154 F.

Supp. 2d 481, 486 (S.D.N.Y. 2001) ("[B]ecause the text of section 1335 includes those who 'may claim' the interpleaded money or property[,] [t]he mere threat of future litigation is sufficient for a plaintiff to invoke the statutory interpleader remedy." (citations omitted)).

Here, the September 2024 letter shows that Great West had a reasonable and bona fide fear of exposure in excess of the policy limits. DE 39 at 10–11. After all, if it had no such fear, it would have had no duty or reason to send the letter. *See Boston Old Colony Ins. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980) (explaining that an insurer has a duty "to advise as to the probable outcome of the litigation" and "to warn of the possibility of an excess judgment").

### B. The court correctly interpreted section 624.155(6).

#### 1. The court correctly rejected Great West's interpretation of "claims" to mean "demands for payment under the policy."

Great West argues that the district court misinterpreted the word "claims." BlueBr. 27–31. In its view, "as used in the statute, a 'claim' means a demand for payment under a policy." *Id.* at 27. The district court correctly rejected this interpretation and Great West's arguments.

***First***, Great West cites two online dictionaries to argue that a "claim" means a "demand for payment." BlueBr. 27. But Great West cherry-picks from those dictionaries' definitions. The same dictionaries also define a "claim" as "a right to have something or get something from someone"[2] or "a right to something."[3] Further, the statute separates the "claim" from the "notice": the insurer must "receiv[e] notice of the competing claims." Fla. Stat. § 624.155(6). This presupposes that claims exist independently of, and before, the insurer's notice of the claims.

***Second***, Great West cites three district court orders. BlueBr. 28. Yet none of those orders involved section 624.155 or interpreted the word "claim." *Life Ins. of N. Am. v. Rainey*, No. 3:23-cv-993, 2024 WL 2016157 (M.D. Fla. Apr. 5, 2024); *Kruse v. Mass. Mut. Life Ins.*, No. 17-cv-61115, 2018 WL 11352651 (S.D. Fla. Jan. 25, 2018); *N. Am. Co. for Life & Health Ins. v. Dye*, No. 3:11–cv–1234, 2012 WL 476090 (M.D. Fla. Aug. 24, 2012).

Instead, those orders addressed whether adverse claims to a death benefit were sufficiently pleaded to sustain a federal interpleader. If anything, the orders cut against Great West: each treats competing

[2] https://dictionary.cambridge.org/us/dictionary/english/claim
[3] https://www.merriam-webster.com/dictionary/claim

assertions of entitlement to a single fund as "competing claims," which is precisely what five injured or deceased occupants pursuing recovery against $2 million in coverage, represented by multiple law firms, with one of the claimants perhaps contributing to the cause of the catastrophic crash, presented here.

***Third***, Great West argues there was no claim until November 14, 2024. BlueBr. 28–29. But that's contradicted by Great West's own letter. The letter—dated September 5, 2024—acknowledged there were multiple "claimant(s)," that "claims . . . are being pursued in this matter", and that counsel had been appointed "to resolve the claims." DE 39 at 10–11.

Great West dismisses this as "boilerplate" and a "shorthand description of the occupants." BlueBr. 17, 38. However, that characterization appears nowhere in the letter and contradicts it: the letter does not describe hypothetical future claimants; it says the claims "are being pursued," in the present tense, "based on our investigation to date." DE 39 at 10. A sophisticated insurer chose those words. On a motion to dismiss, allegations contradicted by an incorporated document yield to the document. *Griffin*, 496 F.3d at 1205–06. Great West cannot

maintain that "claim" means only a formal demand for proceeds when its own claims executive, writing contemporaneously and before this litigation, used "claims" and "claimants" to describe precisely what the district court concluded they describe.

***Fourth***, Great West argues that this Court should compare the language of subsection (4)(a) of the statute with the language of subsection (6). *See* BlueBr. 30. We agree, and so did the district court. DE 86 at 25–26. But the comparison does not help Great West; rather, it supports the district court's conclusion.

Subsection (4)(a) addresses single-claimant scenarios. It applies if an insurer "tenders the lesser of the policy limits or the amount demanded by the claimant." Fla. Stat. § 624.155(4)(a). It has its own 90-day deadline, which runs from the insurer's receipt of "*actual* notice of a claim which is accompanied by *sufficient evidence to support* the amount of the claim." *Id.* (emphasis added).

Subsection (6), by contrast, contains no such language. *Id.* § 624.155(6). Subsection (6) uses the word "notice"—not "actual notice"—and it makes no mention of any "evidence" or "support." *Id.*

Contrary to Great West's suggestion, this Court cannot transplant the language from subsection (4) into subsection (6). "[T]he concept of reading statutes *in pari materia* does not require that elements from one subsection be carried over and inserted into another subsection even if the statutes are related." *State v. Bradford*, 787 So. 2d 811, 819 (Fla. 2001).

The legislature's requirement of "actual notice" and "sufficient evidence to support the amount of the claim" in subsection (4)(a)—but not in subsection (6)—is telling. "It is a general canon of statutory construction that, when the legislature includes particular language in one section of a statute but not in another section of the same statute, the omitted language is presumed to have been excluded intentionally." *E.g.*, *Westgate & Wabasso Corp. v. Word of Faith Cmty. Dev. Corp.*, 428 So. 3d 608, 610 (Fla. Dist. Ct. App. 2026); *accord Statler v. State*, 349 So. 3d 873, 881 (Fla. 2022) ("We do not presume that the Legislature would create a requirement . . . by omission in one section . . . when it affirmatively and expressly included such a requirement elsewhere in the same statute.").

This indicates that subsection (6) does not require "evidence to support the amount of the claim." It further indicates that subsection (6)

does not require “actual notice” and instead other forms of notice suffice. *See generally*, *Notice, Black’s Law Dictionary* (12th ed. 2024) (distinguishing between “actual notice” and other forms of notice such as implied notice); *see also, e.g.*, *Harkless v. Laubhan*, 278 So. 3d 728, 733 (Fla. Dist. Ct. App. 2019) (explaining that a statute’s use of the word “notice” encompassed implied notice).

The rule applies with maximum force here: subsections (4)(a) and (6) were enacted simultaneously in the same bill. Ch. 2023-15, § 4, Laws of Fla. The legislature demonstrably knew how to key a 90-day safe harbor to an evidence-supported claim; it wrote that trigger into the single-claimant provision in subsection (4)(a) and wrote a different trigger—notice of competing claims that in total may exceed the limits—into the multi-claimant provision in subsection (6).

The Florida Supreme Court’s recognition that the negative-implication canon “must be applied with great caution, since its application depends so much on context,” *Stewart v. Vindel*, No. SC2024-0428, 2026 WL 1979606, at *5 (Fla. July 9, 2026) (citation omitted), does not assist Great West here. In *Stewart*, a discrete statutory provision on postjudgment interest could not be read as “an expression of *all*” the

statute said about interest. *Id.* (citation omitted). Subsections (4)(a) and (6) are the opposite: twin safe harbors—each with a 90-day limit, each defining its own trigger—enacted together in the same bill. When the legislature writes two triggers for two safe harbors in one enactment, each trigger is exactly what the canon contemplates—a complete expression of what that provision requires. The context that defeated the inference in *Stewart* compels it here.

The asymmetry Great West decries reflects the two provisions' different demands. Subsection (4)(a) requires the insurer to *pay* the claim or its limits within 90 days, and thus requires evidence of the amount. Subsection (6)(a) requires only that the insurer *file* an interpleader, relinquishing the valuation task to the tribunal, where the competing claims are "determined by the trier of fact." Fla. Stat. § 624.155(6)(a). A trigger of possibility ("may exceed") matches an obligation to file; a trigger of evidence-supported amount matches an obligation to pay. The statute's two triggers fit its two remedies precisely as written.

***Finally***, Great West argues that the 90-day deadline "was not triggered by the filing of the Estates' lawsuits." BlueBr. 31. The district court agreed, so Great West's argument is a strawman. DE 86 at 15 n.5.

### 2. The court correctly interpreted "may exceed" and "who may be liable to the third-party claimants."

Great West argues that the district court "erred in its narrow reading of 'may exceed' and in disregarding the phrase 'who may be liable to the third-party claimants.'" BlueBr. 31–35. Not so.

***First***, Great West argues that "the word 'may' does not appear when describing the time to file the impleader [sic] action." BlueBr. 32. The district court expressly addressed this. DE 86 at 20. As explained *supra* § I.A.2. at 24–26, the court reasoned that the "use of the definite article 'the' when referring to 'competing claims' in the phrase containing the 90-day deadline demonstrates that it is limited to 'competing claims' referenced earlier in the statute, namely competing claims 'which in total *may* exceed the available policy limits.'" DE 86 at 21 (emphasis by court). Great West does not confront the court's reasoning. BlueBr. 32.

***Second***, Great West argues that its interpretation is consistent with the statute's "intent to provide greater certainty and avoid the gamesmanship associated with bad faith claims." BlueBr. 32. The amicus likewise invokes "the reformative intent of the statute" and "its legislative purpose and public policy objectives." GreenBr. 5, 11, 18–21. Yet, under Florida's modern, textualist approach to statutory

interpretation, courts do not interpret statutes based on speculation about "intent." *E.g.*, *State v. Crose*, 378 So. 3d 1217, 1232–33 (Fla. Dist. Ct. App. 2024) (en banc) (explaining that, "[b]etween 2020 and 2022 . . ., the Florida Supreme Court fundamentally changed the framework through which Florida courts interpret statutes" and that the court "*unequivocally abandoned the legislative intent approach*").

"[T]he Legislature enacts bills, not generalized purposes, and a law is not a spirit disembodied from its letter." *T.G. United, Inc. v. AADD Props., LLC*, 371 So. 3d 396, 402 (Fla. Dist. Ct. App. 2023). "Rather, a law consists only of the text that underwent the constitutionally prescribed bicameralism and presentment procedures." *Id.* "We have no authority to inject ourselves into that legislative process by re-writing a statute based on our speculation about its purpose." *Id.* Yet, Great West asks this Court to rewrite subsection (6) to mirror subsection (4)(a) and to add other provisions to what it believes was the legislature's "purpose."

"No legislation pursues its purposes at all costs." *Moncrief v. Kollmer*, 397 So. 3d 190, 194 (Fla. Dist. Ct. App. 2024) (citation omitted). "Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative

choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Id.* at 195 (citation omitted); *see also Atl. Candy Co. v. Yowie N. Am., Inc.*, 400 So. 3d 850, 854 (Fla. Dist. Ct. App. 2025) ("[T]he limitations of a text . . . are as much a part of its 'purpose' as its affirmative dispositions."). Great West's purpose-driven and legislative-intent approach must yield to the statutory text and the Florida Supreme Court's textualist approach to interpretation.

Regardless, as explained *supra* § I.A.1 at 21, the district court's interpretation of the statute provides more "certainty" than Great West's, thereby serving the so-called "intent" of the statute.

***Third***, Great West argues that the phrase "who may be liable to the third-party claimants" requires "consideration of the insured's potential liability to the claimants as part of the assessment of when the 90-day time frame starts." BlueBr. 32. So, the argument goes, because Sharon Ferguson allegedly caused the accident, and because a tort plaintiff in Florida is barred from recovering if they are more than 50% at fault, Great West's insureds were not liable and thus the 90-day

deadline was not triggered. BlueBr. 32–34. The amicus makes the same argument. *See* GreenBr. 5–6, 13–18.

Again, the district court addressed this argument, and Great West and its amicus do not confront the court's reasoning. The court explained that even if Sharon were more than 50% at fault, the September 2024 letter identified several other claimants. DE 86 at 25. Accordingly, "Great West had notice of competing claims that may exceed the Policy Limits irrespective of whether Sharon's Estate could recover." *Id.*

The court also emphasized that the statute uses the word "may." *Id.* In fact, the statute does so twice: "If two or more third-party claimants have competing claims arising out of a single occurrence, which in total *may* exceed the available policy limits of one or more of the insured parties who *may* be liable to the third-party claimants . . . ." Fla. Stat. § 624.155(6)(a) (emphasis added). As the court explained, "whether Sharon's Estate (or any of the other claimants) would *ultimately* succeed on their claim is not relevant." DE 86 at 25 (emphasis added). Instead, the statute requires only that that there "may" be—i.e., there is a possibility of—liability for competing claims in excess of the policy limits.

Possibility, not established liability, is the statutory trigger throughout—which is fatal to Great West's insistence that only near-certain exposure counts. The district court gave "may be liable" full effect by reading "may" as an expression of possibility—the same sense it bears in "may exceed"—while Great West and its amicus would drain "may" of content by reading "may be liable" to effectively mean "is, in the insurer's own assessment, probably liable."

Great West's September 2024 letter recognized that possibility. The letter said "it has become evident that the potential for an excess exposure does exist." DE 39 at 10. The letter acknowledged the existence of multiple "claimant(s)' and "claims." *Id.* And it referred to damages "in excess of the policy limits" and twice referred to "excess exposure." *Id.*

The letter also acknowledged that attorneys were "defending [the insureds] in the matter"—referring to the two wrongful-death lawsuits that had been filed three months before the letter. *See id.* at 11. Parties actively sued for negligence are the model of insureds who "may be liable."

Further supporting the district court's interpretation is the fact that subsection (6)(b), which applies when the insurer chooses to submit

to arbitration instead of file an interpleader action, says that "the arbitrator . . . must consider the comparative fault, if any, of each third-party claimant." Fla. Stat. § 624.155(6)(b). Similarly, subsection (6)(a) acknowledges that there must be a "determin[ation] by the trier of fact." *Id.* § 624.155(6)(a). This shows that comparative fault is considered *after*—at the interpleader or arbitration stage. As the district court explained, the test for triggering the 90-day deadline is not whether the claimants will ultimately succeed on their claims.

***Fourth***, Great West argues that "when used in the context of this statute, 'may exceed' must mean claims reasonably capable of exceeding limits based on actual information available to the insurer." BlueBr. 34. But that is not what "may" means. *Supra* § I.A.2 at 23–24, 28. If the legislature wanted to write the statute to require "claims reasonably capable of exceeding limits based on actual information available to the insurer," it would have done so. This Court "may not rewrite a statute . . . to impose a narrow construction." *Loumpos v. Bank One*, 423 So. 3d 856, 863 (Fla. 2025) (cleaned up).

The premise of Great West's argument—that it needed judicially implied investigation time—ignores that the legislature already supplied

it: 90 days. Great West's real complaint is that 90 days is not enough, or that the legislature should have incorporated parts of subsection (4)(a) into subsection (6). That is a policy argument reserved for the Florida legislature, not any court

***Fifth***, Great West argues that the district court "improperly rejected Great West's argument that subsection (4)(a) provides additional context for interpreting subsection (6)." BlueBr. 34. That argument is already addressed *supra* § I.B.1. at 32–35. Simply put, subsection (6) uses a different standard than subsection (4)(a) by omitting text expressly included in subsection (4)(a).

***Finally***, Great West argues that "the district court's reading creates internal tension within the same statute because it leads to an interpretation that insurers faced with multiple claims are required to tender a policy based on less information than an insurer facing a single claimant." BlueBr. 35.

To begin, Great West does not explain why this causes "tension." There is nothing odd about requiring supporting evidence in a single-claimant situation but not in a multi-claimant situation. After all, in a multi-claimant situation it should be more obvious that there may be

claims in excess of the policy limits. Further, in the multi-claimant setting, the point of the safe harbor is to hand the allocation problem to a neutral forum before the fund is dissipated, a purpose served by prompt filing upon notice of potential excess exposure, not by months of unilateral evidence-weighing.

Further, the premise of Great West's argument is wrong. Whereas subsection (4)(a) requires the insurer to "tender[] . . . the policy limits," subsection (6) does not. Fla. Stat. § 624.155(4)(a). Instead, subsection (6) requires the insurer to file an interpleader action or submit to arbitration. *Id.* § 624.155(6)(a)–(b). Neither of those actions amounts to a tender. *Infra* § I.C at 49–51.

Regardless, even if there were tension, that would not overcome all the other textual and structural clues that support the district court's interpretation. As the Supreme Court recently recognized, sometimes "[i]t is not obvious why" a statute creates an odd result. *Montgomery v. Caribe Transp. II, LLC*, 146 S. Ct. 1199, 1206 (2026). "Better to live with the mystery than to rewrite the statute." *Id.* at 1207; *accord id.* (Kavanaugh, J., concurring, joined by Alito, J.) (acknowledging that the

court's interpretation of a statute would "create a substantial anomaly" but agreeing with it because of "other contextual points").

### C. The court correctly concluded that the September 2024 letter triggered the 90-day deadline.

Great West argues that the district court erred in concluding that the September 2024 letter triggered the 90-day deadline in section 624.155(6). BlueBr. 35–41.

To be clear, Great West does not challenge the district court's consideration of the September 2024 letter. The court concluded it could consider the letter under the incorporation-by-reference doctrine because the letter was central to Great West's claim and there was no dispute as to the letter's authenticity. DE 86 at 16–18 (citing *Johnson v. City of Atlanta*, 107 F. 4th 1292, 1298 (11th Cir. 2024)). Great West does not even mention the incorporation-by-reference doctrine—let alone dispute the court's conclusion that the elements of the doctrine were satisfied. BlueBr. 35–41. Thus, that issue is abandoned, and this Court need not consider it. *E.g.*, *Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 680–82 (11th Cir. 2014).

Instead of challenging the district court's consideration of the letter, Great West argues that the letter did not trigger the 90-day deadline in

section 624.155(6) because Great West sent the letter to comply with its duty of good faith under *Boston Old Colony*. BlueBr. 35–36. The amicus makes the same argument. GreenBr. 2, 4–5, 7–9.

Yet again, Great West and its amicus do not confront the district court's reasoning. As the court explained, "[t]he issue at hand . . . is not why the insurer drafted the letter; the issue is notice." DE 86 at 26. In other words, the deadline in section 624.155(6) does not turn on the purpose of the letter—it turns on whether the insurer had "notice" that there may be competing claims in excess of the policy limits. Fla. Stat. § 624.155(6). The letter could have been written for any reason or no reason at all, and the deadline would be triggered just the same.

Great West and its amicus rely on a non-binding district court order in *Machalette v. Southern-Owners Insurance*, No. 8:10–cv–600, 2011 WL 3703368 (M.D. Fla. Aug. 23, 2011). BlueBr. 37–38; GreenBr. 15–18, 21. But *Machalette* did not interpret section 624.155(6), which is unsurprising because the order was issued more than ten years before the statute took effect. *See* 2011 WL 3703368 at *1–7.

Regardless, *Machalette* does not support Great West's argument. There, an insurer moved for summary judgment on a bad-faith claim,

arguing it was undisputed it acted in good faith. *Id.* at *5. The issue was whether the insurer unreasonably delayed in tendering its policy limits. *Id.* And the analysis turned on whether the insurer "had knowledge that [the claimant's] injuries were so serious that a judgment in excess of the policy limits was likely." *Id.*

The district court granted summary judgment for the insurer, concluding it was "undisputed that [the insurer] acted reasonably under the circumstances because it did not have reliable information about [the claimant's] injuries and went to great lengths to obtain verification of his damages." *Id.* The court disagreed that an "excess letter" sent by the insurer to its insured proved that the insurer acted unreasonably under the circumstances. *Id.* at *6.

The court also engaged in a consequentialist analysis, evaluating the wisdom of the outcome of its ruling. *Id.* at *7. Specifically, the court said if it were to rule that the letter was sufficient evidence of the insurer's knowledge that the claimant's damages "most likely exceeded the policy limits, it would make it impossible for insurance companies to comply with the good-faith duty to put their insureds on notice of possible

exposure to an excess judgment, without accepting responsibility to pay the third-party claimant the policy limits at that time." *Id.* at *7.

*Machalette* is distinguishable for multiple reasons.

***First***, *Machalette* concerned a bad-faith claim—not section 624.155(6). Whereas under a bad-faith claim the issue is whether the insurer acted reasonably under the totality of the circumstances, under section 624.155(6) the issue is whether the insurer had notice that there may be competing claims which in total may be in excess of the policy limits. Fla. Stat. § 624.155(6). Section 624.155(6) replaced the "reasonableness" regime that *Machalette* applied with fixed, objective deadlines. Great West cannot use the caselaw of the old regime to erase the deadline of the new legislative one.

***Second***, *Machalette* was decided on summary judgment under a broad evidentiary record. *See* 2011 WL 3703368 at *1–4. Here, by contrast, the only evidence the court relied on was the September 2024 letter. *See* DE 86 at 22–29. As explained above, Great West has abandoned the issue whether it was proper for the court to consider the letter. And Great West did not argue below—nor has it argued on appeal—that there is other evidence the court should have considered

that would have created a dispute of fact as to whether, in September 2024, Great West had notice that there may be competing claims that may be in excess of the policy limits.

***Third***, when the insurer sent its excess letter in *Machalette*, "all that was known to [the insurer] was what [the insured driver's spouse] told [the adjuster], second-hand, and [the insured driver's] description of [the claimant's] injuries." 2011 WL 3703368, at *6. The insurer, as Great West states, "was still in the process of attempting to learn the extent of the claimant's damages." BlueBr. 37. Here, by contrast, Great West's letter rested not on second-hand fragments but on Great West's own "investigation to date," which had made the excess exposure "evident." DE 39 at 10. The underlying facts—two deaths, including a fifteen-year-old child, and three survivors with incapacitating injuries, against $2 million in total coverage—were fixed and known. *Id.*

***Fourth***, in *Machalette* the court engaged in a consequentialist analysis. 2011 WL 3703368 at *7. That type of analysis would be improper here, where this Court is tasked with interpretation of a Florida statute. *E.g.*, *Fried v. State*, 355 So. 3d 899, 908 (Fla. 2023) ("To the extent the parties and amici disagree with this legislative decision or argue that

the challenged provisions are unnecessary or unwise, it is for the Legislature to evaluate and resolve those policy concerns."); *see also City of Miami v. Gabela*, 390 So. 3d 65, 69 n.4 (Fla. Dist. Ct. App. 2023) ("[C]ourts should not resort to the absurdity doctrine merely because of disagreements with the result of legislation." (citation omitted)).

***Fifth***, even if this Court were to engage in a consequentialist analysis—which it should not—the policy concern in *Machalette* is absent here. Specifically, the court in *Machalette* was concerned that its ruling "would make it impossible for insurance companies to comply with the good-faith duty to put their insureds on notice of possible exposure to an excess judgment, *without accepting responsibility to pay the third-party claimant the policy limits at that time*." 2011 WL 3703368 at *7 (emphasis added).

Here, by contrast, section 624.155(6) does not require the insurer to "accept[] responsibility to pay the third-party claimant." Instead, the statute merely requires the insurer to file an interpleader action or submit to arbitration. Fla. Stat. § 624.155(6)(a)–(b). The insurer does not have to accept responsibility to pay the policy limits when timely invoking (6)(a) or (6)(b). In an interpleader, for example, a claimant is

entitled to a share of the policy limits "as determined by the trier of fact" only "if the claims of the competing third-party claimants *are found to be* in excess of the policy limits." *Id.* § 624.155(6)(a) (emphasis added). Nothing here requires the trier of fact to award any portion of the policy limits in the interpleader. *Id.*

The amicus makes the same mistake: it assumes that "an insurer may be compelled to relinquish valid liability defenses to one or more of the competing claims before it has been able to conduct a fair evaluation informed by discovery." GreenBr. 22. That assumption is wrong.

Both the Florida and federal rule on interpleader recognize that the interpleading plaintiff can deny liability. Fla. R. Civ. P. 1.240 ("It is not ground for objection to the joinder that . . . the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants."); Fed. R. Civ. P. 22(a)(1)(B) ("Joinder for interpleader is proper even though . . . the plaintiff denies liability in whole or in part to any or all of the claimants.").

For example, in *MFA Mutual Insurance v. Lusby*, 295 F. Supp. 660, 662–63 (W.D. Va. 1969), an auto insurer brought an interpleader action but denied liability, alleging that the policy was void due to fraud by the

insured. The insured moved to dismiss "on the grounds that the instant action is not in the nature of interpleader but rather is in fact a motion for declaratory judgment on the insurance policy contract." *Id.* at 663. The motion was "directed to the fact that [the insurer was] denying liability on the insurance policy thereby asserting a claim adverse to the defendant and, consequently, [was] not a disinterested stakeholder." *Id.* at 664. The court rejected that argument, explaining that, "[a] plaintiff is allowed by both 28 U.S.C. § 1335 and Fed. R. Civ. P. [R]ule 22 to bring an action in the nature of interpleader while averring that he is not liable to any or all of the claimants." *Id.*

Simply put, "making a deposit or posting a bond does not waive the stakeholder's contention of nonliability to any of the claimants or for the full amount demanded and paid into the court." 7 *Wright & Miller's Federal Practice & Procedure* § 1716 (3d ed. Apr. 2026 update).

*　*　*

In addition to relying on *Machalette*, Great West makes several other arguments about the September 2024 letter. BlueBr. 38–41. Each argument lacks merit.

***First***, because "the letter was not issued in response to *any demand*, let alone *competing demands*," Great West argues that the September 2024 letter does not prove that Great West had "notice of *competing claims*." BlueBr. 38 (last emphasis added). That argument fails for the reasons explained *supra* § I.B.1 at 29–32. Had the legislature wanted to use the words "competing *demands*," it would have done so. Other provisions of chapter 624 use the word "demands." *See* Fla. Stat. § 624.3161(9)(a)9.f., (9)(c), (9)(c)2.c. But subsection (6) of section 624.155 uses different words: "competing *claims*."

***Second***, Great West argues that "the letter's boilerplate content referring to the multiple occupants of the vehicle as 'claimant(s),' or the use of claimants in plural when referring to those occupants, is not an admission that Great West had notice of 'competing claims' where there is no evidence in the record that even one claim had been made at that time." BlueBr. 38. Again, this argument incorrectly assumes that there must be a demand for a specific amount of money in excess of the policy limits.

***Third***, Great West argues that "the statute requires more than a mere potential for an excess exposure." BlueBr. 39. This argument fails

for the reasons argued *supra* § I.A.2. at 23–29 and § I.B.2. at 36–44. Great West's argument contradicts the text of the statute, which requires only that the claims "may exceed" the policy limits.

***Fourth***, Great West relies on the phrase "who may be liable to the third-party claimants" in section 624.155(6). BlueBr. 39–40. This argument fails for the reasons explained *supra* § I.B.2. at 36–44.

***Finally***, Great West recites a parade of horribles purportedly flowing from the district court's statutory interpretation. BlueBr. 40–41. The amicus does the same. GreenBr. 21–25. As explained *supra* at 48–49, this Court should reject Great West and its amicus's invitation to engage in a consequentialist analysis. *See* Neil Gorsuch, *A Republic, If You Can Keep It* 137–38 (2019) ("[C]onsequentialism . . . take[s] us dangerously far from interpreting the text and toward legislating a new one, encouraging the judge to adopt a meaning that furthers some purpose or social policy outside the statute's metes and bounds").

Regardless, the premise of their argument is false: the district court's interpretation does not "force[] insurers into a choice between fulfilling their good faith obligations and preserving their statutory rights." BlueBr. 40. Nor does it "leave[] insurers vulnerable, whipsawed

between their obligations under *Boston Old Colony* and their ability to access the safe harbor" in section 624.155. GreenBr. 3.

The court expressly noted that its conclusion that the September 2024 Letter triggers the 90-day deadline does not require Great West to blindly accept liability. DE 86 at 26–27. Again, the court pointed out that "Great West conducted an investigation before issuing the [letter] and had an additional 90 days thereafter to further investigate before deciding whether to file an interpleader action." *Id.* at 26. What's more, as explained *supra* at 49–51, filing an interpleader action does not require admitting liability. Nor does it mean any policy proceeds will actually be paid to the claimants.

In sum, there is no conflict to reconcile. *Boston Old Colony* obliges an insurer to warn its insured of possible excess exposure, whereas section 624.155(6)(a) obliges an insurer that wants the safe harbor to file an interpleader action within 90 days of notice of competing claims that may exceed limits. An insurer can easily do both. What cost Great West the safe harbor was not writing the letter in September 2024—it was waiting until February 2025 to file the interpleader action.

## II. This Court should not certify a question to the Florida Supreme Court.

Great West asks this Court to certify a question to the Florida Supreme Court because "this case presents a question of first impression." BlueBr. 41. "On many occasions this court has resolved difficult or uncertain questions of state law without recourse to certification." *Escareno v. Noltina Crucible & Refractory Corp.*, 139 F.3d 1456, 1461 (11th Cir. 1998). This Court has continued that practice in recent years. *E.g.*, *SE Prop. Holdings, LLC v. Welch*, 65 F.4th 1335, 1339 (11th Cir. 2023) (resolving "issues of first impression" concerning a Florida Statute without certifying a question); *Baldwin v. Express Oil Change, LLC*, 87 F.4th 1292, 1295–96 (11th Cir. 2023) (addressing "a novel issue of state law" concerning a Georgia statute, which was "largely untested by Georgia's appellate courts," without certifying a question).

Certification is reserved for questions of state law attended by "substantial doubt." *Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1268 (11th Cir. 2003). There is no substantial doubt here. Novelty is not ambiguity. The fact that section 624.155(6) is recent and that no Florida appellate court has construed it does not make its language unclear. A question should not be certified merely because a litigant, having lost under the

plain text, would prefer a second forum. This Court is fully equipped to apply Florida's interpretive rules to unambiguous statutory language, as it does routinely.

Further, "certification of state law questions is a matter of discretion." *Escareno*, 139 F.3d at 1461. This Court's practice has been to certify "with restraint and only after the consideration of a number of factors." *Id.*

There is good reason not to certify a question here. This case was decided on a motion to dismiss based on a limited factual record. Accordingly, it may turn out that the facts underlying the district court's order on the motion to dismiss are not the whole facts. *See McMillian v. Johnson*, 88 F.3d 1554, 1563 (11th Cir. 1996).

Even if (1) this Court were to certify a question, (2) the Florida Supreme Court were to agree with Great West's interpretation of the statute, and (3) this Court were to then conclude that the September 2024 letter did not prove that Great West missed the 90-day deadline, that would result only in this Court remanding for further proceedings in the district court where more evidence could be introduced. *Infra* § III. Such evidence could show that, even under Great West's interpretation of the

statute, the deadline in section 624.155(6) was triggered more than 90 days before Great West filed its interpleader action. Accordingly, the certified question could be entirely academic—a mere advisory opinion that would have no bearing on the outcome of the case. This Court should not certify a question that would have no outcome on the case.

A requirement for certifying a question is that "the case turns upon it." *Freeman v. First Union Nat'l*, 329 F.3d 1231, 1233 (11th Cir. 2003). As the Florida Constitution puts it, the question must be "determinative of the cause." Art. V, § 3(b)(6), Fla. Const. Here, it may turn out that the certified question would not be determinative of the cause.

It may also turn out that the certified question is moot. The underlying claims against Great West's insureds have not gone to trial. A jury could ultimately find the insureds not liable, or liable for less than the policy limits. Great West would then have no need to rely on section 624.155(6)(a), and certification would be for naught.

It is also significant that Great West abandoned its objection to the district court's consideration of the September 2024 letter. Great West's decision to abandon that simple, procedural argument seems to be strategically designed to fast-track this issue to the Florida Supreme

Court on a limited factual record. That makes this case a poor vehicle for certification to the Florida Supreme Court.

Finally, none of Florida's six district courts of appeal have addressed section 624.155(6). A more orderly, prudent process for the Florida Supreme Court to consider this issue is to allow it to percolate first through Florida's lower appellate courts. A chief justice of the Florida Supreme Court has explained that the court prefers to see controversies over statutory interpretation first develop in the lower courts:

> Controversies over interpretations of statutes often percolate in the district courts over a period of time, and we have discouraged district courts from certifying as questions of great public importance first-time interpretation of statutes since we prefer to see these controversies develop in the district courts to enable us to make the most informed decisions.

*State v. Barnum*, 921 So. 2d 513, 533 (Fla. 2005) (Pariente, C.J., concurring in result only; joined by Anstead and Quince, JJ.).

### III. If this Court reverses, it should make clear that its reversal does not preclude the district court from revisiting the application of section 624.155(6) at summary judgment or at trial.

Great West briefs this appeal as if a decision in its favor would entitle it to relief under section 624.155(6) as a matter of law. It would not.

Indeed, Great West's own conclusion merely asks this Court to "reverse the order dismissing the interpleader complaint and remand this matter for further proceedings." BlueBr. 42. That accurately describes the ceiling of the relief available. After all, the order on appeal is an order granting motions to dismiss and strike a complaint based on the pleadings and the September 2024 letter. DE 86. A decision that the letter does not establish the statutory notice would resolve only that the question cannot be answered based solely on the letter and the pleadings. It would not hold that Great West filed within 90 days of notice; rather, it would return that question to the district court for answer, affirmative defenses, discovery, and adjudication on a full record.

Accordingly, if this Court reverses, it should make clear that its reversal does not preclude the district court from revisiting the application of section 624.155(6) based on the facts at summary judgment

or at trial. As explained *supra* § II, it may turn out that the facts underlying the district court's order on the motion to dismiss are not the whole facts.

Again, the evidence at summary judgment or at trial may show that—even under Great West's interpretation of the statute—the deadline in section 624.155(6) was triggered more than 90 days before Great West filed its interpleader action. Accordingly, a reversal in this appeal should not preclude the district court from revisiting the application of section 624.155(6) at summary judgment or at trial. *Cf., e.g.*, *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 848 (11th Cir. 2004) (A holding that untimeliness is *not* apparent from the pleadings "does not definitively mean that the . . . complaint was timely filed; depending on what discovery reveals, the result at the summary judgment stage may or may not be the same."); *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *McMillian*, 88 F.3d at 1563 ("[A] defendant who does not win summary judgment on qualified immunity grounds may yet prevail on those grounds at or after trial on a motion for a judgment as a matter of law.");

## IV. The amicus misstates the effect of section 624.155(6). But this Court need not address the issue regardless of the outcome on appeal.

The amicus implies that section 624.155(6) provides a total immunity to bad-faith claims. *E.g.*, GreenBr. 4. This Court need not address that issue regardless of the outcome on appeal. If this Court affirms, then section 624.155(6) does not apply. And even if this Court were to reverse, the case would merely be remanded for further proceedings, with the applicability and effect of section 624.155(6) left for another day. *Supra* § III. Nevertheless, as explained below, timely filing an interpleader or arbitration under section 624.155(6) does not provide a total immunity for bad faith.

* * *

In a tort action against an insured, the insurance company is normally liable only up to the limits of its insurance policy. *See, e.g.*, *Markuson v. State Farm Mut. Auto. Ins.*, 380 So. 3d 1258, 1261 (Fla. Dist. Ct. App. 2024). However, "a party that has obtained a judgment against an insured in excess of the insured's liability policy limits may bring a direct third-party bad faith action against the insurance company that

issued the liability policy to the insured." *May v. Ill. Nat'l Ins.*, 771 So. 2d 1143, 1147 n.3 (Fla. 2000).

There is no "checklist" that defines what does or does not constitute bad faith. *Harvey v. GEICO Gen. Ins.*, 259 So. 3d 1,7, 10 (Fla. 2018). "[T]he question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the 'totality of the circumstances' standard." *Berges v. Infinity Ins.*, 896 So. 2d 665, 680 (Fla. 2004). "Each case is determined on its own facts and ordinarily the question of failure to act in good faith with due regard for the interests of the insured is for the jury." *Id.* (cleaned up).

For instance, many insurance policies provide that the insurer will control the defense and settlement of claims against the insured. An insurer "must exercise good faith in satisfying that obligation." *Gutierrez v. Yochim*, 23 So. 3d 1221, 1225 (Fla. Dist. Ct. App. 2009). In other words, "when defending its insured against a claim, the insurer has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Id.* (cleaned up). Insurers can be held liable for bad faith for failing to appropriately defend the insured. *E.g.*, *Harvey*, 259 So. 3d at 11; *Aldana*

*v. Progressive Am. Ins.*, 828 F. App'x 663, 671 (11th Cir. 2020) (unpublished); *Murphy v. Progressive Am. Ins.*, No. 3:22-cv-1074, 2024 WL 5338177, at *6–9 (M.D. Fla. Oct. 11, 2024).

An insurer is also required to "advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same." *Berges*, 896 So. 2d at 680 (cleaned up). Insurers can be held liable for bad faith for failing to appropriately advise the insured. *E.g.*, *id.* at 681–82; *Odom v. Canal Ins.*, 582 So. 2d 1203, 1205 (Fla. Dist. Ct. App. 1991); *Brink v. Direct Gen. Ins.*, 38 F.4th 917, 924 (11th Cir. 2022).

Section 624.155(6) does not provide immunity for any and all conduct that may constitute bad faith. Instead, it merely provides that the insurer's liability will be limited to the policy limits for one specific type of conduct: "failure to pay all or any portion of the available policy limits to one or more of the third-party claimants." Fla. Stat. § 624.155(6). As explained above, failure to pay all or any portion of the available policy limits is not the only way to establish bad faith.

Contrast this with the text of subsection (4)(a) of the same statute, which says that "[a]n action for bad faith involving a liability insurance claim, including any such action brought under the common law, *shall not lie*." Fla. Stat. § 624.155(4)(a) (emphasis added). That difference in language is telling. *See, e.g.*, *Westgate*, 428 So. 3d at 610; *Statler*, 349 So. 3d at 881.

Not only is it clear from the text that section 624.155(6) does not provide a total immunity for bad faith, but interpreting the statute otherwise would also not make sense. Section 624.155(6)(a) expressly notes that "[a]n insurer's interpleader action does not alter or amend the insurer's obligation to defend its insured." If section 624.155(6)(a) were to be interpreted as providing a total immunity for bad faith, then that would mean an insurer would have a hall pass to engage in bad faith going forward—including willfully mishandling the defense of the insured. That would be absurd.

After all, "an insurer's obligations [do not] end by tendering the policy limits. To the contrary, the insurer's duty to act in good faith 'in handling the defense of claims against its insured' continues through the duration of the claims process." *Harvey*, 259 So. 3d at 10 (citation

omitted); *accord Martinez v. GEICO Ins.*, 152 F.4th 1323, 1337 (11th Cir. 2025) ("The duty of good faith generally extends to an insurer's entire conduct in the handling of the claim, including during the derivative litigation against the insured." (cleaned up)).

Finally, before section 624.155(6) took effect, the common law provided that "interpleader was not intended to extinguish independent tort claims, nor intended to relieve the stakeholder from liability in excess of the stake." *Lee W. Coast Life Ins.*, 688 F.3d 1004, 1012 (9th Cir. 2012). To the extent section 624.155(6) abrogated this principle of common law, it needed to do so clearly, and that abrogation must be construed strictly. *E.g.*, *Storey Mountain v. Del Amo (In re Del Amo)*, 158 F.4th 1335, 1343–44 (11th Cir. 2025).

## CONCLUSION

This Court should affirm. To the extent this Court reverses, this Court should make clear that its reversal does not preclude the district court from revisiting the application of section 624.155(6) at summary judgment or at trial.


**HARRIS APPEALS, P.A.**

/s/ *Andrew A. Harris*
**Andrew A. Harris**
andrew@harrisappeals.com
5220 Hood Road, Suite 201
Palm Beach Gardens, Florida 33418
(561) 867-9500

*Appellate Counsel for Rodrick Rolle*

**CREED & GOWDY, P.A**

/s/ *Dimitrios A. Peteves*
**Dimitrios A. Peteves**
dpeteves@appellate-firm.com
filings@appellate-firm.com

/s/ *Bryan S. Gowdy*
**Bryan S. Gowdy**
bgowdy@appellate-firm.com
865 May Street
Jacksonville, Florida 32204
(904) 350-0075

*Appellate Counsel for Nilda Meralla and Lawrencia Ferguson*


## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,974 words, not including items excluded under 11th Cir. R. 32-4.

/s/ *Andrew A. Harris*
Attorney